UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT EARLE JOHNSON,

                Plaintiff,

  v.

SARAH KARIKO, et al.,

                Defendants.

CASE NO. C20-5514 BHS

ORDER

THIS MATTER is before the Court on Magistrate Judge J. Richard Creatura's Report and Recommendation ("R&R"), Dkt. 105, recommending that the Court grant Defendants'[1] Motion for Summary Judgment, Dkt. 81, dismiss Plaintiff Robert Earle Johnson's claims with prejudice, and close the case. Also pending are Johnson's Motion for an Extension of Time to File Objections to the R&R, Dkt. 106, and his Motion for a Preliminary Injunction requiring his release from prison, Dkt. 112.

---

[1] Defendants are Department of Corrections officials Sara Kariko, Frank Longano, and Stephen Sinclair; CRC members ARNP Pamely Saari and PA-C Sarah Landis; and Coyote Ridge Corrections Center staff PA-C Jonathan Neau, corrections officer John Turner, and Rebeccer Hoffarth. *See* Dkt. 5 at 3–4.

Johnson is an inmate at Coyote Ridge Corrections Center ("CRCC"). He asserts 42 U.S.C. § 1983 claims regarding the medical treatment he has received at the facility, including specifically his claim that he has twice contracted COVID-19, and that the medical staff unconstitutionally delayed approval of his knee replacement surgery. Dkt. 5. Johnson also asserts a claim that the Coyote Ridge charges too much for envelopes. *Id.* at 25.

Defendants seek summary judgment, arguing that Johnson has not demonstrated deliberate indifference to his serious medical needs, and that they are entitled to qualified immunity in any event. Dkt. 81. Judge Creatura's R&R recommends granting the motion as to all three claims. Dkt. 105. Johnson objects,[2] arguing that Judge Creatura became an "advocate" for Defendant Sinclair, failed to consider his evidence, and used the wrong summary judgment standard. Dkt. 108. He argues that once he put Sinclair "on notice of his age, his underlying medical conditions, and the living conditions at [the facility]," and Sinclair refused to help him, "whatever happened to Mr. Johnson's health and safety afterward . . . defendant Sinclair is liable." *Id.* at 5.

After he filed his objections, Johnson filed a motion for a preliminary injunction requiring the Department of Corrections (which is not a party) to release him from prison before he contracts COVID-19 a third time. Dkt. 112.

The issues are addressed in turn.

---

[2] Johnson's unopposed Motion for an Extension of Time, Dkt. 106, is DENIED as moot, because he timely filed his objections ten days after seeking an extension. Dkt. 108.

### A. The R&R is ADOPTED

A district judge must determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Nevertheless, objections to a Magistrate's Report and Recommendation are not an appropriate vehicle to rehash or re-litigate the points considered and resolved by the Magistrate Judge. *See, e.g.*, *El Papel LLC v. Inslee*, No. 20-cv-01323 RAJ-JRC, 2021 WL 71678, at *2 (W.D. Wash. Jan. 8, 2021) ("Because the Court finds that nearly all objections are merely a rehash of arguments already raised and decided upon by the Magistrate Judge, the Court will not address each objection here."); *Aslanyan v. Herzog*, No. 14-cv-0511 JLR, 2014 WL 7272437, at *1 (W.D. Wash. Dec. 17, 2014) (rejecting a challenge to a Magistrate's Report and Recommendations when "all of [plaintiff's] objections simply rehash arguments contained in his amended opening memorandum or in his reply memorandum"). As Courts in other Districts have recognized and explained, such re-litigation is not an efficient use of judicial resources.

There is no benefit to the judiciary "if the district court[] is required to review the entire matter *de novo* because the objecting party merely repeats the arguments rejected by the magistrate. In such situations, this Court follows other courts that have overruled the objections without analysis." *Hagberg v. Astrue*, No. CV-09-01-BLG-RFC-CSO,

2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009). In short, an objection to a magistrate's findings and recommendations "is not a vehicle for the losing party to relitigate its case." *Id.*; *see also Conner v. Kirkegard*, No. CV 15-81-H-DLC-JTJ, 2018 WL 830142, at *1 (D. Mont. Feb. 12, 2018); *Fix v. Hartford Life & Accident Ins. Co.*, CV 16-41-M-DLC-JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases); *Eagleman v. Shinn*, No. CV-18-2708-PHX-RM (DTF), 2019 WL 7019414, at *4 (D. Ariz. Dec. 20, 2019) ("[O]bjections that merely repeat or rehash claims asserted in the Petition, which the magistrate judge has already addressed in the R&R, are not sufficient under Fed. R. Civ. P. 72.").

The R&R thoroughly addressed the evidence and the law, and concluded that Johnson failed to provide evidence supporting his claim that any defendant was deliberately indifferent to his serious medical need, with respect to both his exposure to COVID-19 and his "knee" claims. It also rejected Johnson's claims (primarily against Turner) based on his assertion that the pricing of the envelopes available at Coyote Ridge was unconstitutional.

Defendants argue that Johnson's objections are a repeat of his arguments before the Magistrate Judge, and that his disagreement with the R&R's analysis and conclusions are not proper objections under Rule 72. Dkt. 110.

Johnson's "knee claim" was the subject of a prior litigation in this Court, *Johnson v. Morgan*, No. 16-cv-5738 BHS. The parties settled that claim in August 2019. *See Johnson*, No. 16-cv-5738 BHS, Dkt. 155. Johnson sued again in June 2020, after he got COVID-19. Dkt. 5. Johnson complains that Defendant Physicians Assistant Neau and the

ORDER - 4

CRCC violated his constitutional rights by deliberately failing to treat his knee. To establish deliberate indifference in the context of differing opinions between a prisoner and medical providers, the plaintiff must demonstrate that the course of treatment was medically unacceptable under the circumstances and that this course of treatment was chosen in conscious disregard of an excessive risk to the prisoner's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). A deliberate indifference claim does not necessarily require expert testimony. It is not a medical malpractice claim; unlike such a claim, it includes a subjective component. *See Reidhead v. Arizona*, No. CV–12–00089–PHX–JAT, 2014 WL 2861046, at *4 (D. Az. June 24, 2014).

By December 2018—well before Johnson's prior case settled—he and PA Neau learned that his knee pain was caused by both a torn meniscus and osteoarthritis, and Neau told Johnson that the meniscus surgery would not resolve the arthritic pain. Dkt. 83, ¶ 4. In September 2019 (a month after the prior case settled) Neau referred Johnson's case to the CRC for a total knee replacement, and the CRC sought additional X-rays. *Id*. ¶ 11. Updated X-rays were obtained in January 2020. COVID-19 began shortly thereafter, and as Johnson asserts, he was infected with the disease twice, including in June 2020. It appears that Johnson obtained a total knee replacement in March 2021. Dkt. 105 at 19 (citing Dkt. 104 at 307). His "knee claim" is based on the delay in obtaining that surgery.

The R&R concluded that Johnson did not have evidence of subjective, deliberate indifference to his serious medical needs. Instead, he "testified" that the CRC ignores

prisoner complaints and makes decisions without sound medical basis, and has a blanket policy of denying needed care, but he does not have evidence supporting those conclusory allegations. Dkt. 105 at 20–21. The Court agrees. The timeline of the knee claim between the prior settlement (August 2019) and the onset of COVID-19 (March 2020) do not support the claim that Neau or the CRC was deliberately indifferent to Johnson's serious medical needs. COVID-19 understandably halted elective surgeries for everyone, not just prisoners. There is no evidence supporting Johnson's claim that the Defendants unconstitutionally delayed his knee replacement surgery. The R&R on that point is ADOPTED.

Furthermore, and in any event, Defendants argue that although the R&R did not directly address their qualified immunity defense, they properly raised it, Dkt. 81 at 21–22. They argue that Johnson failed to meet his burden of demonstrating that the constitutional violations he claims are clearly established.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test resolves claims of qualified immunity by determining whether plaintiff has alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation omitted).

1    Defendants correctly assert that once the issue is raised, Johnson has the burden of
2 demonstrating that he suffered a constitutional injury and that a reasonable official in the
3 defendant's position would have known that their conduct violated his constitutional
4 rights. *See, e.g.*, *Lenz v. Dewey*, 64 F.3d 547, 550 (10th Cir. 1995). Johnson's response to
5 the underlying motion addressed qualified immunity, Dkt. 103 at 41–43, but did not cite
6 authority supporting his claim that the prison's COVID-19 response was unconstitutional,
7 or that the treatment of Johnson's knee pain was constitutionally deficient. Johnson's
8 objections, Dkt. 108, and his reply, Dkt. 111, reiterate his claim that the defendants were
9 deliberately indifferent to his serious medical needs but neither addresses qualified
10 immunity, and neither cites a case clearly establishing that the conduct at issue here was
11 unconstitutional.

12    The Court agrees that each defendant is entitled to qualified immunity, and
13 Johnson has failed to identify any factual issue that must be resolved before the qualified
14 immunity issue can be determined. This is an additional basis for granting Defendants'
15 summary judgment motion on Johnson's § 1983 claims against them.

16    The R&R is ADOPTED, Defendants' summary judgment motion on Johnson's
17 § 1983 claims is GRANTED, and those claims are DISMISSED with prejudice.

18 **B.    Johnson's Motion for a Preliminary Injunction is DENIED.**

19    The R&R characterizes Johnson's claim as an assertion that it was unreasonable to
20 fail to release vulnerable prisoners in the face of COVID-19. Dkt. 105 at 11 (citing Dkt.
21 103 at 5). Johnson objects to that characterization, arguing he did not and does not seek
22 the release of vulnerable prisoners based on the risk of COVID -19; such a claim would

ORDER - 7

be "outrageous." Dkt. 108 at 4. But Johnson's recent motion, Dkt. 112, seeks at least his own release based on his claim that he is vulnerable to COVID-19. Johnson claims he will "suffer irreparable harm and possible death" if he is not released from prison and sent to his family in Louisiana. *Id*. at 3.

A Temporary Restraining Order's purpose is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006). For a court to grant a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The last two factors merge if the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). When considering whether to grant this "extraordinary remedy, . . . courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

Johnson's motion focuses on the risk of harm in the absence of an injunction requiring his release, but he does not address the other factors. He does not and cannot claim he is likely to succeed on the merits of any claim seeking immediate release against DOC; he has not asserted any such claim and the DOC is not a party to this case. Nor can

Johnson establish that the public has any interest in the forced release of convicted felons prior to the end of their sentence based on their claim that they may get COVID-19 in prison. Johnson's Motion for a Preliminary Injunction, Dkt. 112, is DENIED.

The Clerk shall enter a JUDGMENT and close the case.

IT IS SO ORDERED.

Dated this 2nd day of September, 2022.

BENJAMIN H. SETTLE
United States District Judge